**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JAMES C.[1]**

        **Plaintiff,**

                                          **Civil Action 2:23-cv-1098**
     **v.**                            **Judge James L. Graham**
                                          **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

      Plaintiff, James C., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his applications for

child disability insurance benefits and supplemental security income.  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of

Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's

Reply (ECF No. 13), and the administrative record (ECF No. 7).  For the reasons that follow, it is

**RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's

nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence

Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

## I. BACKGROUND

Plaintiff filed his application for child disability insurance benefits in August 2018 and for supplemental security income in December 2019, alleging that he has been disabled since July 28, 2016, due to PTSD, anxiety, bipolar disorder, ADHD, schizophrenia, and a learning disorder. (R. at 256-64, 265-66, 297.)[2] Plaintiff's applications were denied initially in October 2020 and upon reconsideration in April 2021. (R. at 131-78.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 202-04.) Administrative Law Judge Kimberly S. Cromer ("ALJ") held a video hearing on January 10, 2022, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 54-87.) A lay witness, Nicholas Randolf, along with a Vocational Expert ("VE") also appeared and testified. (*Id.*) On March 8, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 20-53.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

## II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and hearing testimony as to Plaintiff's conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

---

[2] Plaintiff previously applied for benefits which were denied by administrative decision on July 27, 2016. (R. at 23, 88-125.)

## III.    ADMINISTRATIVE DECISION

On March 8, 2022, the ALJ issued her decision.  (R. at 20-53.)  The ALJ found that

Plaintiff had not attained age 22 as of July 28, 2016, the alleged onset date.  (R. at 28.)  At step

one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in

substantially gainful activity since July 28, 2016, the alleged onset date.  (*Id.*)  The ALJ found

that Plaintiff had the severe impairments of degenerative disc and joint disease of the spine; sleep

apnea; obesity; headaches; affective disorders, including a depressive disorder and a bipolar

disorder; a posttraumatic stress disorder (PTSD); a personality disorder; an intermittent explosive

disorder; an anxiety disorder; a schizoaffective disorder; an attention deficit hyperactivity

disorder; and a learning disorder.  (*Id.*)  She further found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 29.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at
any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or
       equal the criteria of an impairment set forth in the Commissioner's Listing of
       Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant 's residual functional capacity, can the claimant perform his or
       her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional
       capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] should avoid climbing ladders, ropes, and scaffolds. He could occasionally climb ramps and stairs. He could occasionally balance, stoop, and crouch and should avoid crawling. [Plaintiff] should avoid work at unprotected heights, with hazardous machinery, and should avoid commercial driving. [Plaintiff] could occasionally operate food controls bilaterally. He should avoid concentrated exposure to vibration. [Plaintiff] could perform simple, routine tasks. He should avoid tandem work. [Plaintiff] should avoid work with the general public as part of routine job duties. He could have occasional interaction with coworkers and supervisors. [Plaintiff] should avoid strict hourly production requirements and should perform work with more end of day work goals. [Plaintiff] could perform work of variable rates, not assembly line work where a machine sets the pace—not meant to eliminate all manufacturing environments, just settings where a machine sets the pace of work. [Plaintiff] could work in a setting with occasional decision making and occasional changes in the work setting.

(R. at 31.)

Plaintiff has no past relevant work. (R. at 46.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 46-47.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since July 28, 2016, the alleged onset date. (R. at 47.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

4

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.

2007)).

## V.  ANALYSIS

Plaintiff's single statement of error arises from one very discrete limitation omitted from

the RFC as formulated by the ALJ: the need for additional unscheduled breaks throughout the

workday.  Susan Rowland, Ph.D., the consultative psychological examiner, had opined that Plaintiff "would [] benefit from …  being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job."  (R. at 806.)  According to Plaintiff, the ALJ rejected this limitation for a reason that, on the record, was totally irrelevant.  As a result, Plaintiff contends that the ALJ did not say enough to allow a subsequent reviewer to understand why this particular limitation set forth in Dr. Rowland's opinion was omitted from the RFC.  The Undersigned agrees.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite his limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.*  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. §§404.1513(a)(3); 416.913(a)(3).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4).  "Medical opinion" is defined as follows:

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions....

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as

understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.... 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

7

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor

"concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis,

and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021

WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July

2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)).

Against this backdrop, the ALJ discussed Dr. Rowland's opinion as follows:

The [ALJ] has read and considered the opinion of Dr. Rowland evidenced within Exhibit 8F. Dr. Rowland was a psychiatrist and mental consultative examiner. Dr. Rowland opined [Plaintiff] could manage his own funds. The [ALJ] finds this opinion less persuasive as [Plaintiff] reported he did not manage his own funds and that his mother managed money. Further, the opinion is less persuasive as [Plaintiff] reported issues counting money and did not report independent shopping. Dr. Rowland further opined [Plaintiff] could understand, carry out and remember simple instructions; could sustain concentration and persist in work related activities at a reasonable pace; would have some difficulty maintaining effective social interactions and might perform better at a job requiring limited interactions with people and the public; and showed difficulties in settings with others in a fast paced environment and would work better in a setting with limited contact and would benefit from learning coping strategies or taking short breaks while at work if symptoms worsened. While not adopting the limitation in understanding, applying, and remembering information verbatim, the [ALJ] finds the opinion that [Plaintiff] would have limitation in this area is consistent with the evidence of record. [Plaintiff] had a history of learning disability requiring IEP and reported relying upon his mother for reminders to take care of his personal care and medications. The [ALJ] finds the lack of limitation in

9

concentration/persistence/pace unpersuasive. The [ALJ] finds the record supports greater limitation in this area.

The [ALJ] finds [Plaintiff]'s breakthrough mental symptomology, including reports of depression, low energy, anxiety with worry, anger/irritability, in addition to headaches and reports of physical pain such as back pain, supports greater limitation in this area. The [ALJ] also has not adopted the limitation in social functioning verbatim, but finds [Plaintiff]'s recurrent reports of anger/irritability and at times hostility towards others, such as his family members, and reports of a desire to withdrawal and [to] interact with others, support for limitation in this area. The [ALJ] has not adopted the limitation in adaptation verbatim. However, the [ALJ] finds limitation in the area is supported by his need for recurrent counseling intervention as well as routine medication management. The [ALJ] finds learning coping strategies as suggested by the examiner is generally consistent with his routine counseling notes. ***However, the [ALJ] finds the need for additional breaks is less consistent with the record, as [Plaintiff] was capable of concentrating on tasks for a long duration, exemplified by his ability to play video games for 7-8 hours per day.*** Therefore, the [ALJ] has not adopted the opinion of Dr. Rowland, but finds the opinion partially persuasive as discussed herein.

(R. at 44) (emphasis added).

 Plaintiff's claim here rests squarely on the highlighted sentence above.  As Plaintiff explains it, in rejecting the opined need for additional breaks, the ALJ viewed the issue strictly as a matter of Plaintiff's "ability or lack of ability in concentration."  (ECF No. 13 at 3.)  According to Plaintiff, however, Dr. Rowland's opinion that Plaintiff would need additional breaks was intended to address the potential for his mental health symptoms to worsen while on the job.  Thus, Plaintiff maintains, his ability to play video games, as relied upon by the ALJ to reject any need for additional breaks, is totally irrelevant.  Plaintiff's view is confirmed by a review of Dr. Rowland's opinion.  (R. 793-807.)

 Dr. Rowland provided a Functional Assessment/Medical Source Statement addressing Plaintiff's abilities and limitations in four areas, generally referred to as the "paragraph B"

criteria, including: (1) understanding, carrying out, and remembering instructions, both one-step and complex; (2) sustaining concentration and persisting in work-related activity at a reasonable pace; (3) maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; and (4) dealing with normal pressures in a competitive work setting. (R. 8-4-806.) In assessing Plaintiff's abilities and limitations in the final category, dealing with normal pressures in a competitive work setting, Dr. Rowland indicated as follows:

> Thus, owing to the combination of supporting evidence noted, the claimant may have some difficulty dealing with normal pressures in a competitive work setting; but, at this time, appears capable of managing at least basic tasks and interactions. His mental functioning was found to be largely intact and he was observed to malinger deficits to his recent and immediate memory. He does not appear to have difficulty in understanding and remembering simple instructions or sustaining concentration and persisting in work-related activity at a reasonable pace.
>
> His indifference and antagonistic nature may lead him to have difficulties working in a setting with others in a fast-paced environment performing complex tasks with other co-workers, however. He may perform better, therefore, in a work environment where he has limited contact with other co-workers and the public under a consistent (not multiple), trusted supervisor accomplishing simple tasks with clear, simple instructions. He would also benefit from learning appropriate coping strategies or being permitted ***to take additional short breaks while at work if mental health symptoms worsen while on the job***.

(R. at 806) (emphasis added).

The Commissioner's attempt to explain the ALJ's reasoning on this distinct issue is not persuasive. The Commissioner characterizes Plaintiff's claim as an "attempt[] to invalidate the ALJ's rationale by arguing the ALJ only provided that Plaintiff demonstrated the ability to focus through his ability to play video games." (ECF No. 12 at 8.) The Commissioner cites other record evidence confirming Plaintiff's "normal concentration" and "normal attention span." (*Id.* at 9.) The Commissioner also highlights the ALJ's conclusion that Plaintiff had "moderate

11

limitations with regard to concentrating, persisting, or maintaining pace" and the examples the ALJ noted to support her conclusion.  These arguments miss the point.  Again, Plaintiff's claim here does not challenge the ALJ's assessment of his concentration abilities.  Indeed, the ALJ found Dr. Rowland's "lack of limitation in concentration/persistence/pace unpersuasive" and that the record "support[ed] greater limitation in this area." (R. at 44.)  Accordingly, Plaintiff's sole contention here is that the ALJ's stated reason for rejecting the opined limitation for additional short breaks ignores that such a limitation relates to the potential for his "mental health symptoms to worsen while on the job."  (R. 806.)

At bottom, the ALJ's rejection of a limitation requiring additional short breaks, under the circumstances described above, precludes the Court's ability to trace the ALJ's path of reasoning on that issue.  That is, the ALJ rejected the at-issue portion of Dr. Rowland's opinion in a way that is not clear to the Court.  Such failure constitutes reversible error.  *Tammy D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3026, 2023 WL 3243199, at *8 (S.D. Ohio May 4, 2023) ("The ALJ's portrayal of the record evidence, however, raises questions preventing the Court from tracing his reasoning.  As a result, the ALJ failed to build an accurate and logical bridge between the *relevant* evidence and the result."); *Fyffe v. Comm'r of Soc. Sec.,* No. 1:21-CV-332, 2022 WL 2176538, at *11 (N.D. Ohio June 16, 2022) (The reasons the ALJ gave to support that conclusion, however, failed to build an accurate and logical bridge between the *relevant* evidence and the result).  For this reason, the Undersigned recommends that Plaintiff's statement of error be sustained.

## VI.    CONCLUSION

For these reasons, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:   January 9, 2024                        /s/ Elizabeth A. Preston Deavers
                                               Elizabeth A. Preston Deavers
                                               United States Magistrate Judge